THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff, v. TERRY L. MINOR, Defendant-Appellee (Jim Edgar, Contemnor-Appellant).

Second District   No. 2—86—1126

Opinion filed October 23, 1987.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and Bret A. Rappaport, Assistant Attorney General, of Chicago, of counsel), for appellant.

Robert P. Pilmer, of Edwards, Jordan & O'Connor, of Aurora, for the People.

JUSTICE HOPF delivered the opinion of the court:

This is an appeal by contemnor, Jim Edgar, Secretary of State, from the December 5, 1986, order of the circuit court of Kane County finding him guilty of indirect criminal contempt. The court ordered Edgar to pay a $500 fine and to refrain from driving a motor vehicle within Illinois for a period of 120 days. Edgar's motion for a stay pending appeal was denied. On December 5, 1986, this court granted Edgar's emergency motion for a stay.

The facts leading up to the trial court's finding of contempt are as

follows. On March 3, 1986, defendant, Terry Minor, was charged with failure to dim headlights (Ill. Rev. Stat. 1985, ch. 95½, par. 12—210), and driving under the influence of alcoholic liquor (Ill. Rev. Stat. 1985, ch. 95½, par. 11—501(a)(2)). Pursuant to section 11—501.1 of the Illinois Vehicle Code (Code) (Ill. Rev. Stat. 1985, ch. 95½, par. 11—501.1), Minor was notified that his Illinois driver's license was suspended effective April 27, 1986, for six months. On April 22, 1986, Minor filed a request for a judicial driving permit and a request for a hearing, on the issue of his statutory summary suspension, pursuant to section 2—118.1 of the Code (Ill. Rev. Stat. 1985, ch. 95½, par. 2—118.1). On April 24, 1986, Minor pleaded guilty to the offense of driving under the influence of alcohol. Minor was ordered to pay a $400 fine plus costs, to submit to remedial alcohol and drug treatment as an outpatient, and to obey the terms of the summary suspension.

On May 9, 1986, a hearing was held before Judge John Petersen on Minor's request for the issuance of a judicial driving permit (JDP). At the conclusion of the hearing, the court issued the JDP, effective May 26, 1986. Under the conditions of the JDP, Minor could drive for employment purposes and for attending alcohol treatment programs. Additionally, the JDP authorized Minor to take his son to school in Wyoming on June 26 to 29, 1986. On June 5, 1986, the office of the Secretary of State returned to Judge Petersen the notice of issuance of a JDP. In a form letter, the director of the driver services department informed the judge that Minor did not meet the statutory criteria set forth in section 6—206.1 of the Code dealing with the issuance of judicial driving permits, as the JDP was issued "for reasons other than employment or medical reasons."

On June 26, 1986, Minor filed a motion for rule to show cause for Secretary of State Edgar's failure to enter Minor's JDP on his central file. Minor maintained that the Secretary of State had not appealed the issuance of the JDP within 30 days of that issuance and that neither the Secretary nor his employees possessed the authority to review the orders of the circuit court. On July 3, 1986, the circuit court issued a rule to show cause (the rule) and directed it to Jim Edgar. That rule stated in pertinent part:

"IT IS SO ORDERED that the party herein named shall appear at the time and place stated herein to show cause if any he may have, why he should not be held in civil contempt of court *** for his failure to obey the order of court entered May 9, 1986."

In August 1986, the office of the Secretary of State issued Minor a JDP effective as of July 1, 1986. On September 5, 1986, the date

set for hearing on the rule to show cause, no one appeared in open court for Edgar. Judge Petersen continued the matter to September 24, 1986. On that date, Assistant Attorney General Paula Giroux appeared and filed her appearance as attorney for Jim Edgar and a motion to vacate the rule to show cause. Judge Petersen informed the parties that the matter would be continued until October 30, 1986. In response to an inquiry from attorney Giroux regarding what the hearing would pertain to, the court stated: "[O]n your motion to vacate. In the event that that is not granted, it will be on the rule." Giroux moved for an order that the case was moot since the Secretary of State's office had issued the JDP subsequent to the rule to show cause. The court responded:

"Counsel, I consider the Secretary of State's actions, if established, to be in indirect criminal contempt of court, which is not rendered moot by actions after the fact by the Secretary of State."

On October 30, 1986, a hearing was held on the rule to show cause. Present at that hearing were Minor's attorney, Assistant Attorney General Giroux as counsel for Secretary of State Jim Edgar, and Steve Schnorf, chief deputy director of the driver services department of the office of the Secretary of State. Edgar was not present. At the hearing Schnorf testified regarding the procedures employed by his department upon receipt of the JDPs issued by the courts. Schnorf stated that if his department, in reviewing a JDP, determined that it asked or instructed the department to do something which the department had no statutory authority to do, the department returned the JDP to the issuing court accompanied by information describing why the department lacked such authority.

It was Schnorf's testimony that the JDP issued to Minor authorized Minor to drive his child out of State to school and that this instruction made the JDP invalid. Schnorf stated that, according to statute, a JDP should be entered only for employment purposes and for medical purposes. Schnorf explained that upon passage of the law establishing JDPs, the Secretary of State's office had been confronted with JDPs containing permission to drive for reasons beyond the statute. As a result, the department formulated a policy of returning any JDP which instructed the department to exceed the Secretary of State's statutory authority to enter it. Schnorf testified that he was the highest ranking officer in the Secretary of State's office who took part in discussions leading up to the formulation of the department's policy for handling JDPs which the department considered invalid. Edgar was never a party to the discussions, nor had Schnorf ever dis-

cussed the policy regarding the JDP procedure with Edgar.

Schnorf related that subsequent to the Minor case, the law regarding JDPs was changed to reflect the type of procedure followed by Schnorf's department in the Minor case, *i.e.*, to permit the department to return to an issuing court a JDP which did not comport with the statute. This statutory change became effective on September 18, 1986.

In response to questioning by the court, Schnorf related that after Minor's JDP was rejected by the Secretary of State's office, it was later honored. Schnorf explained that since the time of the particular unauthorized activity granted in the JDP had passed, that activity was considered to be moot. As the remaining reasons for the issuance of Minor's JDP, employment and medical, constituted reasons which the department understood to be those intended by the JDP process, the department entered the JDP on Minor's central file. When asked by the court to examine a JDP form from the court's file and to tell the court if the form directed the Secretary of State either "to do anything or not to do anything," Schnorf admitted, "I see nothing that directs us to either do anything or to not do anything."

At the conclusion of the hearing, the court pointed out that in light of the law in existence at the time the Minor JDP was issued, it considered the issue before the court to be one which affected the separation of powers as mandated by the Federal and State constitutions. The court asked counsel to supply the court with any memoranda and cases dealing with the separation of powers and the statutory interpretation of section 6—206.1 of the Code, and, in particular, sections 6—206.1(c) and (d) (Ill. Rev. Stat. 1985, ch. 95½, pars. 6—206.1(c), (d)). Specifically, the court sought any information which showed that the JDP statute in effect at the time of issuance of Minor's JDP gave the Secretary of State the right and authority to reject the permit and to refuse to enter it upon the driver's record. The court reserved its ruling on the rule to show cause until December 5, 1986, pending the submission of any memoranda by the parties.

Following arguments on December 5, 1986, the court issued its ruling. In making that ruling the court pointed out that the main issue facing the court was whether an official of the executive branch of the government could ignore an order of the court, especially since there existed numerous methods of attacking, contesting, or challenging an order of the court other than the method of ignoring it. The court noted that its order for a JDP in the instant case, whether correctly or incorrectly issued, was never appealed or otherwise challenged in any legal proceeding and that instead it was just ignored by

the Secretary of State's office.

The court further noted that Secretary of State Edgar had waived personal service of the rule to show cause which issued on July 3, 1986, and which commanded Edgar to appear before the court. The court pointed out that as of the instant date, Edgar had never appeared before the court in response to the rule. The court found that Secretary of State Edgar was in indirect criminal contempt beyond a reasonable doubt.

Edgar's counsel, Assistant Attorney General Giroux, waived the Secretary's presence for purposes of sentencing. On the issue of the rule to show cause, the court assessed a fine of $500 and ordered that Edgar should not operate a motor vehicle within Illinois for a period of 120 days commencing December 6, 1986.

On December 5, 1986, this court granted Edgar's emergency motion for a stay of the circuit court's order pending appeal.

On appeal, Edgar contends: (1) that the trial court's order finding him in indirect criminal contempt of court is facially invalid; (2) that the trial court erred in finding Edgar in indirect criminal contempt for the failure of the Secretary of State's office to enter the JDP issued to Minor on May 9, 1986, and/or for Edgar's failure to appear personally before the court as ordered by the court's July 3, 1986, rule to show cause; (3) that the trial court deprived Edgar of due process of law in finding him in indirect criminal contempt of court; and (4) that the sentence imposed by the trial court exceeded the bounds of permissible discretion.

■ The contemnor, Jim Edgar, first argues that the order finding him in indirect criminal contempt is facially invalid because it is unclear and fails to recite the evidentiary facts underlying the court's decision. Although it is preferable to set forth the specific facts constituting the basis for the contempt ruling in the order itself, this court is not precluded from reviewing the record on appeal, together with the order, to determine the correctness of a contempt order. (*People ex rel. Woodward v. Oliver* (1975), 25 Ill. App. 3d 66, 75-76, 322 N.E.2d 240.) We find that the court's order when read with the rule to show cause indicates that the court held contemnor in contempt for failing to honor the JDP.

■ The order holding contemnor in contempt of court read in relevant part:

> "This matter coming before the court for argument of counsel and decision by the court on *** the Rule to Show Cause issued July 3, 1986; the court having heard the argument of counsel, and being otherwise fully advised in the premises;

The court finds that Jim Edgar is guilty of indirect criminal contempt of court, beyond a reasonable doubt and upon finding him guilty, his presence for sentencing being waived, sentences him to pay a $500 fine within 30 days, and furthermore orders, in lieu of a period of incarceration, that beginning at 12:01 AM on December 6, 1986 and continuing for a period of 120 days that Jim Edgar not drive a motor vehicle within the State of Illinois."

This order, holding contemnor in contempt, specifically stated that the court's decision was on the rule to show cause.

The rule to show cause read in relevant part:

"IT IS SO ORDERED that the party herein named [contemnor Jim Edgar] shall appear at the time and place stated herein to show cause if any he may have, why he should not be held in civil contempt of court:

\* \* \*

for his failure to obey the order of court entered May 9, 1986."

The May 9, 1986, order granted the JDP.

Thus, it is apparent from the rule and from the court's contempt order that the court was holding contemnor in contempt of court for his failure to obey the May 9, 1986, order, and not for his subsequent failure to appear personally on the rule to show cause.

Having found that the court's contempt order was for contemnor's failure to obey the order entered May 9, 1986, we address ourselves to the issue which we believe is determinative here, that is, whether the trial court erred in finding contemnor in indirect criminal contempt for not obeying the May 9 order. We believe that the evidence was insufficient to prove contemnor's guilt of indirect criminal contempt beyond a reasonable doubt.

■■ ■ Criminal contempt has been defined as conduct which is calculated to embarrass, hinder, or obstruct a court in its administration of justice or derogate from its authority or dignity, thereby bringing the administration of law into disrepute. (*People v. L.A.S.* (1986), 111 Ill. 2d 539, 543, 490 N.E.2d 1271; *People v. Siegel* (1983), 94 Ill. 2d 167, 171, 445 N.E.2d 762.) Indirect contempt involves conduct that does not occur in the presence of the trial court and therefore is not within the personal observation and knowledge of the judge. (*Allen v. Duffie* (1984), 127 Ill. App. 3d 820, 822, 469 N.E.2d 702.) Criminal contempt is a crime and, as such, consists of an intent, or state of mind, and an act, both of which must be proved beyond a reasonable doubt. (*People v. Ziporyn* (1984), 121 Ill. App. 3d 1051, 1056, 460

N.E.2d 385, *rev'd on other grounds* (1985), 106 Ill. 2d 419, 478 N.E.2d 364.) Only wilful conduct can constitute indirect criminal contempt (*People ex rel. Hartigan v. Jansen* (1986), 151 Ill. App. 3d 208, 213, 502 N.E.2d 1129), and wilful conduct is conduct performed knowingly or with knowledge (Ill. Rev. Stat. 1985, ch. 38, par. 4—5). Therefore, for contemnor to have been proved guilty beyond a reasonable doubt of criminal contempt, it would have had to have been shown that contemnor knowingly intended not to obey the court's May 9, 1986, order and that this conduct was directed against the dignity and authority of the court.

The May 9, 1986, order did not order the contemnor, as Secretary of State, to do anything. It only ordered that a JDP be issued. The statute governing JDPs, which was in effect at the time of the May 9 order, stated in relevant part:

> "The Secretary of State shall design and furnish the courts with an official JDP form to be issued by the clerk of the court, upon direction from the court, to a successful Petitioner under this Section. Such form shall also contain a notification which shall be sent to the Secretary of State signifying the name, driver's license number and legal address of the successful petitioner, and the full and detailed description of the limitations of JDP. This information shall be entered upon the petitioner's driving record but shall be available only to the courts, police officers, and the Secretary of State to be used in assessing driver performance." Ill. Rev. Stat. 1985, ch. 95½, par. 6—206.1(d).

As set forth in the statute, a JDP is "to be issued by the clerk of the court, upon direction from the court, to a successful Petitioner." (Ill. Rev. Stat. 1985, ch. 95½, par. 6—206.1(d).) A notification of the issuance of the JDP, containing certain specified information, is to be sent to the Secretary of State. (See *People v. Inghram* (1987), 118 Ill. 2d 140.) The information is to be entered upon the petitioner's driving record. Under the provisions of this statute, only the court and the clerk of the court participate in the issuance of the JDP. (See *People v. Inghram* (1987), 118 Ill. 2d 140.) Thus, a petitioner would have the rights specified in the JDP once the clerk issues the JDP on the court's direction. Upon receipt of the notification of the issuance of the JDP, the Secretary of State is to perform only the ministerial duty of entering certain information on the petitioner's driving record. The statute in effect at the time did not authorize the Secretary of State to review the trial court's decision to issue the JDP, and, therefore, the Secretary of State could not take any action on the JDP which

would have affected its issuance or validity.

■ In the instant case, the contemnor's office returned to the court the notice of the issuance, explaining that it would not be entered on defendant's central file because the Secretary of State's office had decided that defendant did "not meet the statutory criteria set forth in Section 6—206.1 of the Illinois Vehicle Code." Steve Schnorf, chief deputy director of the driver services department of the Secretary of State's office, testified at the hearing on the rule to show cause that his department had formulated a policy of returning a JDP to an issuing court if the department determined the JDP directed it to do something which the department had no statutory authority to do. Although this action was contrary to the statute, it was not conduct calculated to embarrass, hinder, or obstruct the court in its administration of justice or derogate from its authority or dignity. (*People v. L.A.S.* (1986), 111 Ill. 2d 539, 543, 490 N.E.2d 1271; *People v. Siegel* (1983), 94 Ill. 2d 167, 171, 445 N.E.2d 762.) This is so because, despite his contrary intent, contemnor lacked the power to affect defendant's driving privileges under the JDP. Thus, while the failure to enter the JDP on defendant's driving record may have been nonfeasance and the return of the notification of the JDP to the court may have been a malfeasance, neither act constituted criminal contempt. Therefore, the contemnor, Jim Edgar, was not proved guilty beyond a reasonable doubt of indirect criminal contempt for violation of the trial court's order of May 9, 1986.

■ We realize that in reaching our decision we have adopted an approach not raised by either party, *i.e.*, whether the trial court erred in finding defendant guilty of a crime that was not committed. Since this question, however, involves a substantial right, we have considered it as a matter of plain error (107 Ill. 2d R. 615(a)) and have based the resolution of this case on the answer to that question.

In light of the above, we reverse the judgment of the circuit court of Kane County.

Reversed.

LINDBERG, P.J., and UNVERZAGT, J., concur.