No. 3--97--0811

_________________________________________________________________

 IN THE

 APPELLATE COURT OF ILLINOIS

 THIRD DISTRICT

 A.D., 1998

IN RE MARRIAGE OF ) Appeal from the Circuit Court

DEBORAH ALMQUIST,               ) of the 12th Judicial Circuit,

                                ) Will County, Illinois

Petitioner-Appellant, ) 

 )

and ) No. 96--D--1407

 )

FRANK ALMQUIST,                 ) Honorable

                                ) Robert C. Lorz

Respondent-Appellee. ) Judge, Presiding

_________________________________________________________________

Modified Upon Denial of Rehearing

JUSTICE BRESLIN delivered the opinion of the court:

_________________________________________________________________

Respondent, Frank Almquist, filed a petition for adjudica­

tion of indirect criminal contempt alleging that the petitioner, Deborah Almquist, failed to comply with the trial court's order granting him limited telephone visitation with their only child, H.A.  The court granted the petition and sentenced Deborah to two years of court supervision.  Because we hold that the playing of an audio tape in the background during a telephone conversation does not constitute a "conversation" as defined in the Illinois eavesdropping statute (720 ILCS 5/14--1 
et
 
seq
. (West 1996)), we affirm.

FACTS

Frank and Deborah Almquist were married in 1989.  Their daughter, H.A., was born in 1991.  In 1996, Deborah filed a peti­

tion for dissolution of marriage.  The trial court granted temporary custody of H.A. to Deborah.  Subsequently, Frank re­

quest­ed and received telephone visitation with H.A.  The order gave Frank the right to telephone visitation with H.A. every Monday, Wednesday and Thursday evening.

On May 27, 1997, Frank filed a petition for adjudication of indirect criminal contempt alleging Deborah failed to comply with the court order concerning telephone visitation.  At the hearing on the petition, Frank testified he called Deborah's home at 8 p.m. on Monday, May 12, 1997, but was never allowed to speak with H.A.  Instead, Deborah attempted to engage Frank in argument.  Frank testified he did not argue with Deborah, but continued to ask to speak to H.A.

Frank testified he called H.A. on May 15, 1997.  During their conversation, a recording was played at high volume in the background.  Frank recognized the recording as his "sui­cide tape."  He explained that the tape was a record­ing of his own voice he had made approximately 1½ years earlier.  

Frank testified that, with the aid of his answering machine, he recorded the May 15 telephone call to his daugh­ter as well as all of the other calls that are the subject of this hearing.  The trial court admit­ted the audio­tape of the tele­phone call into evidence.  On the tape a phone can be heard ringing.  When the receiver is picked up, no one speaks into the phone, but Frank's "sui­cide tape" can be heard playing in the back­ground.  Frank and H.A. then have a short conversation while the "sui­cide tape" continues to play in the back­ground.

Frank testified he called H.A. four days later.  This time only the "sui­cide tape" was audible on the other end of the line.  Frank repeatedly asked to speak to H.A., but was never able to speak with her.  After a short time, Frank hung up while the "sui­cide tape" continued to run.  

Deborah testified that, at the times appointed for Frank's telephone visitation, she usually waits for caller ID to indicate the number before instructing H.A. to answer the call.  Deborah stated she then leaves the room.  Deborah testified that, to the best of her knowledge, Frank was able to speak with H.A. on all of the dates in question.  Deborah denied playing the "suicide tape" in the background during Frank's telephone visitation.  Deborah testified H.A. often plays tapes on Deborah's tape player, but that H.A. does not have access to her copy of the "suicide tape."  Deborah testified that no one lives at the resi­

dence besides H.A. and herself.

The trial court found Deborah guilty of indirect criminal contempt for failure to provide 
telephone visitation on May 12, 15 and 19. The court denied Deborah's motion for new trial.

ANALYSIS

Initially we note that Frank, the appellee, has not filed a brief in this case.  However, we find that the record and appel

lant's brief are sufficient to allow us to address the merits of this appeal without the benefit of an appellee's brief.  See 
First Capitol Mortgage Corp. v. Talandis Construction Corp.
, 63 Ill. 2d 128, 345 N.E.2d 493 (1976).

I.  Admission of the Audiotape

On appeal, Deborah contends the trial court erred in admit­

ting Frank's tape of his telephone visitation with H.A. because it was recorded in violation of the Illinois eaves­drop­ping stat­

ute.  720 ILCS 5/14--1 
et
 
seq.
 (West 1996).

Generally, a reviewing court will not disturb a trial court's ruling on the admis­si­bil­i­ty of evidence absent an abuse of discretion.  
People v. Enis
, 139 Ill. 2d 264, 564 N.E.2d 1155 (1990).  However, a matter of statutory con­struc­tion is a ques­

tion of law subject to 
de
 
novo
 review.  
Village of South Elgin v. City of Elgin
, 203 Ill. App. 3d 364, 561 N.E.2d 295 (1990).  Here, the admissibility of Frank's tape depends upon a judi­cial construc­tion of the eavesdropping statute and an appli­ca­tion of the statute so construed
.  Thus, the matter before this court is a question of law which we will review 
de
 
novo
.  
Bender v. Board of Fire & Police Commissioners
, 183 Ill. App. 3d 562, 539 N.E.2d 234 (1989). 

The Illi­nois eaves­drop­ping statute pro­vides in rele­vant part that "[a] person commits eaves­drop­ping when he *** [u]ses an eaves­drop­ping device to hear or record all or any part of any conver­sation unless he does so *** with the consent of all of the parties to such conversa­tion."  720 ILCS 5/14--2(a)(1) (West 1996).  Any evidence obtained in viola­tion of the eaves­dropping statute "is not admissible in any civil or criminal trial."  720 ILCS 5/14--5 (West 1996). 

In denying Deborah's motion for a new trial, the trial court ruled that Frank's tape was admis­sible because it fell within the exemption to the eavesdrop­ping statute provid­ed at section 14--

3(i).  720 ILCS 5/14--3(i) (West 1996).  That section exempts from the statute the "[r]ecording of a conversa­tion made by or at the request of a person *** who is a party to the conversation, under reasonable suspicion that 
another party to the conversation
 is committing, is about to commit, or has committed a criminal offense against the person ***."  (Emphasis added.)  720 ILCS 5/14--3(i) (West 1996).  Frank's daughter, H.A., was the only other party to the conversation on the tapes.  Because Frank had no reasonable basis to suspect that his six-year-old daughter was likely to commit a crime during his telephone visitation with her we hold that this exemp­tion does not apply to this case.

Next we must consid­er whether the tape is admissible on any other ground.  See 
People v. Paarlberg
, 243 Ill. App. 3d 731, 612 N.E.2d 106 (1993) (issue on appeal is the trial court's judgment, not the rationale for its judgment).  Specifi­cal­ly, we address whether Frank's tape, or any portion of it, is a record­ing of a "con­ver­sa­tion" within the meaning of the eaves­dropping stat­ute.

In 1986 our supreme court held that there is no viola­tion of the eavesdropping statute when an individual records state­ments made to him without the knowl­edge or consent of the person making the statements because the declar­ant has no expec­tation of privacy concerning those state­ments.  
People v. Beardsley
, 115 Ill. 2d 47, 503 N.E.2d 346 (1986); 
People v. Herrington
, 163 Ill. 2d 507, 645 N.E. 957 (1994).  Subsequently, the General Assem­bly added the defini­tion of "con­ver­sa­tion" to the eavesdrop­ping stat­

ute.  Pub. Act 88--677, eff. De­cem­ber 15, 1994 (adding 720 ILCS 5/14--1(d) (West 1996)).  The statute defines "conver­sa­tion" as "any oral commu­nication between 2 or more persons regardless of whether one or more of the parties intended their communication to be of a private nature under circumstances justifying that expectation."  720 ILCS 5/14--1(d) (West 1996).  Thus, the amended statute prohibits the record­ing of any conver­sation without the consent of all parties regardless of any party's expec­ta­tion of privacy.  When Frank and H.A. spoke on the tele­

phone they were clearly engag­ing in a conversa­tion covered by the statute.  Therefore, we hold that the trial court erred in admit­

ting this portion of the recording.  

However, the allow­ance of inad­mis­si­ble evi­dence is harm­less error if properly admitted evidence was suffi­cient to prove each element of the crime beyond a reasonable doubt.  
People v. Lee
, 162 Ill. App. 3d 972, 516 N.E.2d 360 (1987).  With this in mind, we turn to the question of whether the remain­der of the tape was admissible.  

In playing the "suicide tape," Deborah was undoubt­edly ex­

press­ing her disdain for Frank and she was cer­tainly seeking to disrupt the telephone visita­tion.  Her efforts, however, did not consti­tute partic­ipation in a "con­ver­sa­tion" in any ordinary sense of that term.  Rather, she was engag­ing in crimi­nal conduct aimed at frustrating Frank's tele­phone visita­tion.

We are mindful that a statute which defines the very terms it uses should be construed according to those defini­tions.  
Garza v. Navistar Internation­al Transpor­tation Corp.
, 172 Ill. 2d 373, 666 N.E.2d 1198 (1996).  However, the addition of a defini­

tion of "con­ver­sa­tion" to the eavesdropping statute was an effort narrow­ly tai­lored to the goal of remov­ing any expec­ta­tion of privacy element from the crime of eaves­drop­ping.  See 88th Ill. Gen. Assem., Senate Proceedings, April 21, 1994, at 139 (state­

ment of Senator Dillard), and May 20, 1994, at 42 (statement of Senator Dudycz).  It was not the legislature's intent to provide a defini­tion of "conver­sa­tion" so broad as to encom­pass any audible expression whatsoev­er.  Accord­ingly, we hold that Deborah was not partici­pating in a "conversa­tion" within the meaning of the eavesdrop­ping statute when she played a recording of Frank's voice for the purpose of inter­fering with his tele­phone visita­

tion.  Therefore, because the eavesdropping statute prohibits only the recording of conversa­tions, the trial court commit­ted no error in admitting that portion of Frank's tape which recorded the "sui­cide tape."

But Deborah contends that the "sounds in the background" of Frank's conversation with H.A. are inad­mis­sible because they are the fruit of Frank's illegal recording of his conversation with his daughter.

Section 14--5 of the eavesdropping statute provides that "[a]ny evidence obtained in violation of this Article is not admis­si­ble in any civil or criminal trial."  720 ILCS 5/14--5 (West 1996).  Illi­nois courts have inter­preted this provision to be the legislature's express adoption of the "fruit of the poisonous tree" doctrine.  
People v. Maslowsky
, 34 Ill. 2d 456, 216 N.E.2d 669 (1966).  Under the "fruit of the poisonous tree" doc­trine, an unlawful search taints not only the evidence ob­

tained from the search, but also evidence derivative of the search.  
Wong Sun v. United States
, 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963).

The case at bar does not present a fruit of the poisonous tree problem.  Although recorded on the same tape, and in one instance simultaneously, the evi­dence of Deborah's inter­fer­ence with Frank's tele­phone visita­tion is not derivative of Frank's conver­sation with H.A.  The May 19 episode is particular­ly illus­trative of this point.  On that date, Frank recorded a telephone call, but never engaged in a conversation with anyone.  Neverthe­

less, on that occasion Deborah interfered with Frank's telephone visita­tion by playing the "suicide tape".  As the peculiar facts of this case demonstrate, the 
broad remedial purpose and coverage of the eavesdropping statute prohibits the recording of conversa­

tions without the consent of all parties thereto, 
but not the recording of 
a mere telephone connection.

II.  Sufficiency of the Evidence

Deborah also contends that the evidence presented at trial was insufficient to find her guilty of indirect criminal con­

tempt. 

To sustain a finding of indirect criminal contempt for the violation of a court order outside the presence of the court, two elements must be proved:  (1) the existence of a court order; and (2) a willful violation of that order.  
People v. Totten
, 118 Ill. 2d 124, 514 N.E.2d 959 (1987).  Each of these elements must be proved beyond a reasonable doubt.  
People v. Minor
, 162 Ill. App. 3d 140, 514 N.E.2d 1042 (1987).  A reviewing court will not disturb a trial court's finding of indirect criminal contempt if, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the elements of the crime beyond a reasonable doubt.  
People v. Townsend
, 183 Ill. App. 3d 268, 538 N.E.2d 1297 (1989).

Frank's testimony and the admissible portions of Frank's tape established that the "sui­cide tape" was played while Frank attempted to exercise his right to tele­phone visita­tion.  In addi­tion, Deborah testi­fied H.A. did not have access to Deborah's copy of the "sui­cide tape."  From these facts, the trial court could have ratio­nally concluded that it was Deborah who played the "suicide tape" at the times in ques­tion. 

However, Deborah maintains that, even if proved, her conduct did not violate the express terms of the trial court's order.  If we were to accept Deborah's strict construction of the order, she would have been in compliance with it anytime a connection was made when Frank called for visita­tion.  We disagree.  It is clear that a reasonable person would understand that implicit in the trial court's order was a requirement that Frank be permitted telephone visitation free of obnoxious inter­ference by Deborah.  Therefore, we hold that the evi­dence proper­ly admitted against Deborah was suffi­cient for a ratio­nal trier of fact to find Deborah guilty of indirect crimi­nal con­tempt beyond a reasonable doubt.

For the foregoing reasons, the judgment of the circuit court of Will County is affirmed.

Affirmed.

BRESLIN, J., with HOMER, P.J., and LYTTON, J., concurring.