(No. 32942.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* FRANCIS J. LOUGHRAN, Plaintiff in Error.

*Opinion filed March 17, 1954.*

JOHN F. TYRRELL, and DANIEL D. GLASSER, both of Chicago, for plaintiff in error.

LATHAM CASTLE, Attorney General, of Springfield, and FRANK H. MASTERS, JR., State's Attorney, of Joliet, (FRED G. LEACH, of counsel,) for the People.

Mr. JUSTICE MAXWELL delivered the opinion of the court:

Plaintiff in error, Francis J. Loughran, an attorney at law licensed by this court, brings writ of error to review a judgment of the circuit court of Will County, sentencing him to three days in the county jail for an alleged direct criminal contempt of that court. The court's judgment is based upon plaintiff in error's conduct as defense attorney in a criminal trial then being tried in that court before a jury.

The judgment order of the trial court is as follows: "Order. These proceedings come on for consideration on this 4th day of February, 1953, as to the guilt of Francis J. Loughran for contempt of court committed by him in the open presence of the Court in the trial of the case of The People of the State of Illinois vs. Rose Gordon, No. 9880. Francis J. Loughran, an attorney of the Will County Bar, is present in open court and Frank H. Masters, Jr., State's Attorney, is present.

"It appears that the jury after having been out for approximately from 3.15 p.m. to now, 11:29 p.m., in the case of The People of the State of Illinois vs. Rose Gordon, No. 9880, larceny, has been unable to arrive at a verdict and has just been discharged by the Court from further consideration of the cause.

"It further appears that there has just come to the attention of the Court and just prior to the discharge of the jury in the case of The People of the State of Illinois vs. Rose Gordon, No. 9880, that at noon on this day two of the jurors attempted to interview one of the witnesses in the case as to some question of whether [weather] at the time and place of the alleged larceny in the People vs. Gordon case about which no contradictory testimony had been introduced at the time of the attempted interview.

"It further appears from the Court's knowledge of the record in the case of The People of the State of Illinois vs.

Rose Gordon, charged with larceny, that Mr. Loughran was the attorney for the defense; that prior to the commencement of final arguments, Mr. Loughran indicated to the Court that he was going to engage in argument which the Court advised him would be improper; that Mr. Loughran is an experienced lawyer of this bar for some thirty years, including the trial of civil and criminal cases; that the Judge of this court advised Mr. Loughran that he should confine himself within the bounds of law for legitimate argument.

"It further appears from the Court's own knowledge that in open court in the course of Mr. Loughran's final argument to the jury, that in the presence of the Judge of the court that he persistently before and after the sustaining of objections made by the State's Attorney, on the subject matter hereafter set forth, notwithstanding the requests of the Court to refrain from such improper argument to the jury that he continued and argued that there had been an illegal search and seizure of articles from the body of or from the person of the defendant after her arrest and incarceration; that a verdict of not guilty should be returned notwithstanding the attitude of merchants in Joliet; that the jury could not convict unless the defendant alone was guilty of the alleged crime; that the jury could fix the value of the property alleged to have been stolen without regard to the evidence.

"It further appears from the Court's own knowledge of the record that the Court had ruled during the course of the trial that there had been no illegal search and seizure of the articles from the body of or from the person of the defendant after her arrest and incarceration; that there was no evidence to indicate any interest on the part of the merchants in Joliet; that the evidence showed that the defendant and another who was not apprehended committed the offense; that the uncontradicted evidence shows the value of the stolen property to be $170.

"It further appears, in the opinion of the Court, that the evidence showed conclusively that the defendant was guilty of the crime of larceny as charged in the indictment.

"It further appears from the record that the defendant did not take the witness stand; that the only evidence for the defense was that it rained six (6) miles west of Joliet on the day in question and the day before; that there was evidence in the People's case that there was no mud on the clothing alleged to be stolen; that a policeman testified that he saw the defendant drop on the ground the clothing alleged to have been stolen near the alleged place where the theft in Joliet occurred.

"It further appears that the Court is satisfied from the evidence and his general knowledge that the crime was committed by a representative of an organized shop lifters ring.

"It further appears that contempt of counsel, Loughran, was made more apparent by his long years of experience and his representations of such long years of experience to the jury in the course of his argument and in his mannerisms and inflections and tone of voice in his statements made and in his closing argument.

"The Court, therefore, finds that Francis J. Loughran is guilty of wilful contempt of court committed in the presence of the Court while in session and wilfully, intentionally, and contemptuously done.

"It is, therefore, ordered and adjudged by the Court that Francis J. Loughran be and he is hereby held in wilful contempt by this court made in the presence of the Court while in open session and judgment is entered against the said Francis J. Loughran for the wilful contempt of court made in the presence of the Court while in open session and as a penalty he is sentenced to confinement in the Will County Jail for a period of three (3) days.

"In accordance with the offer on motion of Francis J. Loughran sentence is stayed for ten (10) days in order

to enable him to perfect his appeal, and stay is granted without bond.

"The action of the Court is taken after considerable thought and due consideration. The case went to the jury some eight (8) hours ago. The point sometimes arrives in the interest of justice and public good, the maintenance of respect, the dignity and authority of courts, even as against its own officers, punishment must be given. Lawyers are officers of the Court and are bound not to treat it contemptuously.

James V. Bartley, Judge."

Thereafter on February 11, 1953, plaintiff in error filed a motion to vacate this order, generally denying the findings of the court, denying any wilful contemptuous acts, and objecting to the matters contained in said order which did not pertain to the conduct of plaintiff in error or were mere conclusions or opinions of the court. This motion was denied.

No information or written charges were made, no order for rule to show cause was entered, no hearing was had and no opportunity was given to plaintiff in error to defend or deny the charges prior to the adjudication of guilt and sentence. Thus it is apparent from a reading of the order, which is also borne out by the record, that plaintiff in error was adjudged guilty of a direct criminal contempt for acts committed in the presence of the court.

All courts are vested with an inherent power to punish for contempt as an essential incident to the maintenance of their authority and the administration and execution of their judicial powers. A summary proceeding to punish for direct contempt, properly used within the discretion of the court, is not a violation of the constitutional guarantee of due process. *In re Terry*, 128 U.S. 289; *People* v. *Siegal*, 400 Ill. 208.

In a direct criminal contempt proceeding, that is, for contempts committed in the presence of the judge, in court, which he observes and has personal knowledge of, no formal charge is filed and no plea, issue or trial is required. (*In re Terry*, 128 U.S. 289, 9 S. Ct. 77.) The contempt having been committed in the presence of the court, evidence is unnecessary and no record is made. (*People ex rel. Owens* v. *Hogan*, 256 Ill. 496.) However, the accused has a right of appeal, and it is, therefore, necessary for the court to enter a written order setting forth fully and clearly the facts out of which the contempt arose so that the reviewing court may determine if the committing court had jurisdiction to enter the order. (*People* v. *Rongetti*, 344 Ill. 107.) All the essential facts must be fully set forth and no part thereof can be supplied by presumptions or inferences (*People* v. *Tavernier*, 384 Ill. 388,) and no facts which did not occur in the presence of the court should be taken into consideration by the court in adjudging guilt or in fixing the punishment. *People* v. *Rongetti*, 344 Ill. 107.

The power to adjudge guilt and impose punishment without proof or examination, and without plea, trial or issue exists in no other situation or proceeding. It is an exception to our constitutional guarantees which we would regard as intolerable in any other proceeding or for any other purpose. It is readily susceptible of abuse and fraught with danger not only to personal liberties but to the respect and confidence which our courts must maintain. Although such a power is universally recognized as essential to an orderly and effective administration and execution of justice, it should be exercised with utmost caution and strictly restricted to acts and facts seen and known by the court, and no matter resting upon opinions, conclusions, presumptions or inferences should be considered.

Tested by the application of these principles, the order here considered cannot stand. The plaintiff in error was

adjudged guilty of contempt for perpetrating the acts set out in the order which the court found were contemptuous. The order announced by the court at 11:20 P.M. found that "there has just come to the attention of the court" that "at noon on this day" two of the jurors attempted to interview one of the witnesses in the case about the weather at the time of the alleged crime, which interview was attempted before any evidence regarding the weather had been introduced. This finding itself shows it was something about which the court had no personal knowledge. There is no finding whatever that the plaintiff in error had anything to do with this attempted interview or even knew about it. The order subsequently finds that evidence for the defense showed that it rained on the day of the offense. An inference, from the fact that this evidence was introduced after the attempted interview, that the plaintiff in error had anything to do with the alleged acts of the jurors would be the grossest kind of injustice.

The order further finds that in the "opinion" of the court the evidence showed conclusively that the defendant being tried was guilty; that the defendant did not take the witness stand; that it rained on the day of the crime; that there was evidence in the People's case that there was no mud on the clothing alleged to be stolen; that the court is satisfied from the evidence and "his general knowledge" that the crime was committed by a representative of an organized shop-lifters' ring. Did the court find plaintiff in error guilty of a direct criminal contempt because the jury failed to reach a verdict when in the "opinion" of the court the defendant was guilty; because the defendant elected to or plaintiff in error advised him not to take the witness stand; because the evidence on behalf of the defendant conflicted with the People's evidence; or because plaintiff in error was representing a member of a shop-lifters' ring? These opinions, conclusions and findings can have nothing to do with an adjudication of contempt

by plaintiff in error unless they were included in this order to raise such inferences and they are clearly improper and incompetent.

We have read the record of plaintiff in error's argument to the jury, the objections made to that argument and the rulings of the court on those objections. While it is true that the plaintiff in error did on several occasions attempt to repeat statements to which the court had sustained objections, we see nothing in the record indicating that the court was embarrassed in the performance of its duty, that justice was obstructed or that plaintiff in error's conduct was disrespectful to the court. At no time during this argument and the rulings on the numerous objections of the State's Attorney did the court indicate that it considered plaintiff in error's conduct contemptuous or even disturbing. The strongest admonitions given by the court during the argument were: "Mr. Loughran, I would suggest that you confine yourself within the confines of the evidence"; and "I have to sustain the objection. I have asked counsel to confine himself within the bounds. He knows what are proper arguments. Did you hear me?" and "The objection is sustained. Again, Mr. Loughran, confine your arguments to that which you know is argument;" and the final admonition by the court: "Objection sustained. Confine yourself to argument and within the evidence, I wish you would, Mr. Loughran." These admonitions hardly indicate the court then considered plaintiff in error's conduct contemptuous, or that the court was embarrassed in any way, but indicate rather that the court was in complete command of the situation. We do not believe the court would have been justified in finding the plaintff in error guilty of a criminal contempt for his conduct in the presentation of his argument alone and seriously doubt that the court would have entered the order here without taking into consideration the improper matters recited therein.

The order here is replete with opinions, conclusions, and inferences. It shows the court considered matters improper in a direct criminal contempt proceeding and such an order violates the due process clauses of the State and Federal constitutions. The motion of defendant in error to transfer this cause to the Appellate Court is therefore denied.

The judgment of the circuit court of Will County is reversed and the plaintiff in error is ordered discharged.

*Judgment reversed.*