(No. 56104.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. MARA SIEGEL, Appellee.

*Opinion filed February 4, 1983.*

SIMON, J., dissenting.

Tyrone C. Fahner, Attorney General, of Springfield, and Richard M. Daley, State's Attorney, of Chicago (Mi-

chael E. Shabat and Kevin Sweeney, Assistant State's Attorneys, of counsel), for appellant.

Michael E. Deutsch, Shelly A. Bannister, and Brian Glick, of Chicago, for appellee.

Frederick F. Cohn, of Chicago, *amicus curiae*.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Respondent, Mara Siegel, a licensed attorney, was summarily found in direct criminal contempt by the circuit court of Cook County, fined $1,000, and ordered incarcerated until the fine was paid. The appellate court reversed the judgment (102 Ill. App. 3d 529), and we allowed the People's petition for leave to appeal. 73 Ill. 2d R. 315.

The facts are adequately stated in the appellate court opinion and will be reviewed here only to the extent necessary to discuss the issues. On April 28, 1980, Marie Rodriguez, charged with various criminal offenses, appeared before the circuit court. Ms. Rodriguez contended that she was a soldier and combatant fighting for Puerto Rican freedom. She contended further that she was a prisoner of war and that the circuit court had no jurisdiction over her. She waived her right to counsel for the purposes of the circuit court proceedings but asserted her "right as a prisoner of war to request legal advisers." Due to her continued disruptive conduct the circuit court ordered that she be gagged. On April 29, 1980, the court ordered that Rodriguez be returned to the courtroom so that she could be properly advised of her right to counsel under Supreme Court Rule 401 (73 Ill. 2d R. 401). Rodriguez, bound and gagged, was brought into the courtroom by three deputy sheriffs. Respondent, who was seated in the spectators' section of the courtroom, approached the bench. After identifying herself by name and as legal adviser for Rodriguez, she objected to

the court's jurisdiction over Rodriguez on the ground that she was a prisoner of war. The court asked if respondent had filed an appearance. She answered that she had not done so and objected to the binding and gagging of Rodriguez. She demanded that Rodriguez be treated as a prisoner of war and stated, "This is outrageous display of the United States' cruel and inhumane treatment \*\*\*." The court then stated:

> "Let the record show I stated to you [Siegel] when you came into my chambers, you will not be allowed to stay in this courtroom unless you file an appearance the way an appearance should be filed \*\*\*."

The court then cited respondent for contempt, fined her $1,000, and ordered that she be held in custody until the fine was paid.

The circuit court prepared a written order finding respondent in direct contempt of court. In the order, dated April 29, 1980, and stamped filed May 2, 1980, the circuit court stated that, prior to the case against Rodriguez being called, respondent appeared in his chambers and introduced herself as an attorney. The court informed her that to have standing before the court in the case against Rodriguez a formal appearance must be filed and that if she did not file an appearance she would not be allowed to address the court in open session. The order stated that respondent indicated her understanding of these requirements. The order further stated that respondent did not file an appearance as the attorney of record for Rodriguez and that when Rodriguez was brought before the bar, respondent approached the bench without authorization and addressed the court in a loud and abusive manner. The order then cited respondent's accusation that the court had engaged in "an outrageous display of the United States' cruel and inhumane treatment." The order noted that when the court asked respondent during the proceedings whether she had filed an appearance she informed the court that she had not. The order stated that "both the

language and physical conduct of Mara Siegel threatened a breach of the peace and caused the orderly operations of this court to be disrupted." The order provided that because of the above-described conduct respondent was found to be in direct contempt of court and sentenced to pay a fine in the amount of $1,000. The order remanded respondent to the custody of the Cook County Department of Corrections until the fine was paid.

The People contend that respondent was properly held in contempt because she deliberately disobeyed a valid court order, interrupted the circuit court proceedings while under the duty, as a spectator, to remain silent, and attempted to represent a defendant who had waived counsel. The People also assert that in addition to defying a court order respondent violated a standing rule of the circuit court of Cook County which requires an attorney to file an appearance before representing a client in court. See Cook County Circuit Court Rule 1.4(a).

Respondent argues that the only logical inference that can be drawn from the circumstances shown is that she had no intent to commit contempt but rather that she made a good-faith effort to accommodate the legitimate needs of her client and the circuit court. Respondent states that because Rodriguez wished to avoid any action which might be construed to be recognition of the jurisdiction of the circuit court, she considered herself under explicit instructions from her client not to file an appearance. She denies that the court gave her any order in chambers concerning the filing of an appearance and maintains that she would not have spoken had she understood that she was under court order to be silent. She contends that when she saw her client being brought into the courtroom bound and gagged she behaved in a manner calculated to serve her client without obstructing court proceedings or contravening the terms of any order of which she was aware. Respondent does not contend that she was entitled to disobey

a clear order of the court.

To sustain a finding of direct criminal contempt of court, it must be shown that particular conduct was calculated to embarrass, hinder or obstruct a court in its administration of justice, to derogate from its authority or dignity or bring the administration of law into disrepute. (*People v. Miller* (1972), 51 Ill. 2d 76, 78; *In re Estate of Melody* (1969), 42 Ill. 2d 451, 452.) The intent to commit contempt of court may be inferred from the contemnor's actions (*People ex rel. Kunce v. Hogan* (1977), 67 Ill. 2d 55, 61), although a finding of contempt will not stand where it is shown that the attorney acted in good faith to serve her client and the court (*People v. Miller* (1972), 51 Ill. 2d 76, 79; *People v. Kuelper* (1977), 46 Ill. App. 3d 420, 423). The People contend that good faith is not a defense to a charge of refusing to obey a court order and argue that this case is distinguishable from those holding that an attorney should not be held in contempt for a few overzealous remarks made in good faith to represent a client. The distinction, they argue, is that respondent's conduct was contemptuous, not because of what she said, but because she addressed the court at all.

The record shows that Rodriguez' prior disruptive conduct presented the possibility of disorder in the court. Clearly respondent was aware of this volatile and difficult situation. Assuming that she considered it appropriate to object to the jurisdiction of the court and to present her contention that Rodriguez was a prisoner of war, she could have done so by a limited appearance, followed by a written motion. The fact that she chose instead to make her demands in the midst of an already unstable, difficult, and conceivably dangerous setting gives rise to a reasonable inference that her conduct was calculated to embarrass, hinder or obstruct the court in its administration of justice. We are of the opinion that the circuit court's finding that respondent engaged in acts that were contumacious is sup-

ported by the record.

For the reasons stated, the judgment of the appellate court is reversed and the judgment of the circuit court is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*

JUSTICE SIMON, dissenting:

I thought it was settled that there is no direct contempt of court unless the defendant either disobeys an explicit and proper order of the court or engages in court in conduct calculated to embarrass, hinder or obstruct the court in its administration of justice, derogate from its authority or dignity, or bring the administration of law into disrepute. (12 Ill. L. & Prac. *Contempt* sec. 3 (1955); see, *e.g., In re Estate of Melody* (1969), 42 Ill. 2d 451, 452.) I see nothing in the record to indicate that there was an explicit order by the court commanding respondent not to address it until she had filed an appearance, and I do not understand the basis for the majority's conclusion that her behavior was calculated to embarrass the court or interfere with the proceedings.

The record indicates that Ms. Siegel spoke with the circuit court judge in his chambers after she learned that the judge had ordered the family of Ms. Rodriguez excluded from his courtroom. However, there was no transcript recording that conversation. The only indications in the record in this regard are the judge's own assertions, one made the next day (April 29, 1980) when the judge addressed the respondent orally in open court and the other incorporated in a written order dated April 29, 1980, but not filed until May 2, 1980, finding Ms. Siegel in contempt.

As the courts of this State have consistently recognized, the power to punish for contempt is an extraordinary power (*e.g., People v. Miller* (1972), 51 Ill. 2d 76, 78; *People ex rel. Andrews v. Hassakis* (1955), 6 Ill. 2d 463, 466; *People v. Loughran* (1954), 2 Ill. 2d 258, 263; *People v.*

*Kuelper* (1977), 46 Ill. App. 3d 420, 422). When direct criminal contempt allegations are founded on an act which occurs in court, as here, the contempt proceeding is generally a summary one, without notice, formal charges, pleas, jury, evidentiary record or significant opportunity for explanation or rebuttal such as would be required by the Federal Constitution in the context of any other criminal proceeding. (*People v. Tomashevsky* (1971), 48 Ill. 2d 559, 563-64; *People ex rel. Andrews v. Hassakis* (1955), 6 Ill. 2d 463, 466-67; *People v. Loughran* (1954), 2 Ill. 2d 258, 263.) This procedure is permissible in this rare instance because it is frequently the only way to effectively punish contumacious acts and maintain order in the courtroom while judicial proceedings are being conducted. (*People v. Loughran* (1954), 2 Ill. 2d 258, 263.) With this power must come restraint in its exercise. As we noted in *People v. Loughran*, "[i]t is readily susceptible of abuse and fraught with danger not only to personal liberties but to the respect and confidence which our courts must maintain. \*\*\* [I]t should be exercised with utmost caution and strictly restricted to acts and facts seen and known by the court, and no matter resting on opinions, conclusions, presumptions or inferences should be considered." 2 Ill. 2d 258, 263.

A citation for direct contempt based solely on a judge's recollections of what he said to the contemnor in chambers, a full day after that conversation occurred and not supported by any contemporaneous memorandum or any record, does not satisfy the standard announced in *Loughran*. It is noted that in the appellate court as well as in this court Ms. Siegel denied that the circuit court judge gave her any order in chambers concerning the filing of an appearance and maintained she would not have spoken had she understood she was under any court order to refrain from doing so.

To uphold a citation under circumstances such as these would risk compromising public confidence in the judiciary

in too many ways, even if no intentional abuse ever occurs. The potential for arbitrary or vindictive action by a judge is inherent whenever his decisions are unreviewable, as they are for all practical purposes when all a reviewing court has to go on is the judge's own version of what went on in his chambers. In addition, the possibility of honest mistake is present wherever memory must be relied on, and is a hazard to be concerned about in a case such as this where the alleged contemnor is not allowed to cross-examine the judge or present her own witnesses in support of her view that there was no order for her to disobey. The latter danger is illustrated here by the fact that the judge stated to Ms. Siegel in court on the day after their meeting in his chambers that "I stated to you when you came into my chambers, *you will not be allowed to stay in this court-room* unless you file an appearance the way an appearance should be filed" (emphasis added), while in his written order dated that day, but not filed until three days later, the judge based the contempt citation on a statement he claimed to have made in chambers that she *would not be allowed to address the court* until she had filed her appearance. Based on the judge's own recollection it is unclear precisely what act was prohibited by his "order" in chambers, that of remaining in the courtroom or the distinct act of addressing the court. From our perspective, this should raise substantial doubts as to whether there was any order at all that Ms. Siegel could have disobeyed, or any admonition of a type that, if disobeyed, would justify punishment for contempt.

I also cannot agree with the majority that Ms. Siegel's contempt citation can be upheld on the theory that her actions in court were inherently contumacious or were calculated to embarrass the court. There is nothing inherently disrespectful or disruptive about failing to fill out an appearance form, or even about approaching the bench from the spectator's section and addressing the court without having one on file. I have been unable to find any case

holding it to be so, in spite of the circuit court rule requiring an appearance to be filed. In this case Ms. Siegel addressed the court at an unfortunate time, only moments after a previously loud and abusive defendant had been escorted into the courtroom bound and gagged and just as the judge was about to resume a disrupted trial. However, she had been requested by her client not to file an appearance but to be in the courtroom to advise her anyway as the trial progressed. Under these circumstances it was not unreasonable, in my judgment, for Ms. Siegel to object to her client being led into the courtroom bound and gagged, a situation which itself is normally an affront to the dignity of judicial proceedings (*Illinois v. Allen* (1970), 397 U.S. 337, 344, 25 L. Ed. 2d 353, 359, 90 S. Ct. 1057, 1061) and was certain to cast her client in an unfavorable light. She objected briefly, and she did so as soon as her client was brought into the courtroom and her case was called, rather than waiting for the proceedings to begin and then interrupting them.

The majority opinion acknowledges that a finding of contempt is inappropriate where an attorney acts in good faith and the attorney's conduct is designed to serve the client and the court. The cases establishing that courts have the inherent power to enforce their orders by contempt citations do not go as far as to hold that any disobedience to a court rule is inherently contemptuous. My view of the record is that Ms. Siegel's conduct was a good-faith attempt to represent her client and to serve both her client and the law by objecting to a defendant being brought into a courtroom bound and gagged, an objection which would always be a proper one for the record. I find nothing in this record which convinces me that Ms. Siegel intended to obstruct court proceedings even though she may have been overzealous in presenting her objection. I believe her citation for criminal contempt was an abuse of discretion and would affirm the judgment of the appellate court.