THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WAYNE ROGERS, Defendant (Jack P. Rimland, Contemnor-Appellant).

Second District   No. 2—86—0888

Opinion filed September 18, 1987.

Rick Halprin, of Stamos, Rimland, Halprin & Clark, of Chicago, for appellant.

Fred L. Foreman, State's Attorney, of Waukegan (William L. Browers and David A. Bernhard, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE NASH delivered the opinion of the court:

Contemnor, Jack P. Rimland, was defense counsel for Wayne Rogers, who was convicted of murder and armed robbery after a trial by jury. At the conclusion of the trial on June 20, 1986, the prosecutor orally requested that sanctions be imposed against defense counsel for making "talking objections," making "a personal attack upon the prosecutors," and for violating the court's order *in limine* which prohibited defense counsel from mentioning the death penalty during trial.

The trial court responded to the State's request as follows:

"Okay. There was a motion in limine, and it was stated by [the prosecutor]. I also stated at the beginning of this case that—that we would be on a one-to-one basis between the attorneys. Both the motion in limine and my directions that we be one-on-one and not doubling-up have been violated.

Mr. Rimland has violated constantly from the very beginning in his objections when it was his place to make objections, it was [co-counsel's] place to make the objection. Mr. Rimland has constantly given reasons for his—his objections from the—from the table over there, the lawyer's table, and I said that at the beginning you come up to talk to me about the objections and we'll try to do it out of the presence of the jury if it got too loud. We'll go into the other room. I also know that you have loud voices, and that yet you are able to contain them because at least one time before me you did contain it. You were just so soft I couldn't hear you. But that—that wasn't the usual run of the—of the arguments.

I think that you have been constantly in violation, and it has been my opinion that the reasons for this could very well be that the more error that I made in this—in my rulings here would give more reasons for an overruling of this case on a higher level.

Now, I'm not sure whether that is—was your—your plan, or whether it was simply your nature to act as you have. Even you, [co-counsel], at times, even though you've been more courteous and very courteous at times, have gone on beyond the point where I have said, 'There was an objection. Stop.'

That's about as far as I am going to go on you, but as far as Mr. Rimland, he has continued, and I see no reason why I should not—in fact, I would be derelict in my duty if I didn't find you in contempt, and I do herewith find Mr. Rimland in contempt of this court, and I'll fine him five hundred dollars.

It's not so much the amount of the fine, it's the fact that you have been held in contempt, and that you have been fined that counts.

Okay."

The record does not contain any written order of contempt, if one was entered by the trial court.

Contemnor filed a motion to vacate the contempt which was heard on August 22, 1986. The following is the trial court's disposition of the motion:

"I have sat and heard many trials since I've been a judge, and I've had many attorneys come before me and I know the difference between when a person is heated up by the trial, the stress of the trial, and when something is done deliberately. I think that [the prosecutor] hit it quite correctly, that there were times when Mr. Rimland conducted himself properly as a lawyer should conduct himself at a trial.

Unfortunately, there were many times during the trial, and I think the record will substantiate that, that Mr. Rimland deliberately proceeded against the orders of the Court, and in such a manner at times almost as if Mr. Rimland was attempting to bait the Court. I think that when a person, no matter how brilliant he is, determines to go outside the bounds of decorum, legal ethics, the evidence in the case and so on, in order to win a point in court, is completely improper and as far as I'm concerned, the conduct of Mr. Rimland was really abominable throughout most of the trial. And I think I indicated something similar to that at the end at the time I held him in contempt.

I also pointed out that there were times that [co-counsel] was close, but on the other hand that he approached the matter differently, with a different style than what Mr. Rimland did.

[Co-counsel] was apologetic many times throughout the trial to the Court. I think that I was proper in ruling as I did in holding Mr. Rimland in contempt and I think to do otherwise and to reverse myself right now would be against the best interests of justice, and I will deny the motion."

The record does not contain a transcript of the trial proceedings relating to the conduct or comments of contemnor for which he was cited by the court.

On appeal, contemnor argues that the trial court improperly found him to be in direct contempt at the conclusion of the trial, and that the record is inadequate to uphold his citation for contempt because it lacks specific findings of misconduct. Since we agree with contemnor that the trial court's order of contempt is insufficient, we do not address the first issue.

▪▪▪ It is well settled that a judgment order of direct criminal contempt must: (1) be in writing; (2) set forth the grounds upon which the contempt is based; and (3) contain not merely opinion or conclusions of the trial judge, but facts showing the basis of the contempt. (*People v. Loughran* (1954), 2 Ill. 2d 258, 263, 118 N.E.2d 310; *People ex rel. Woodward v. Oliver* (1975), 25 Ill. App. 3d 66, 75, 322 N.E.2d 240, *cert. denied* (1975), 423 U.S. 927, 46 L. Ed. 2d 255, 96 S. Ct. 275.)

The reason for this rule lies in the fact that the accused has a right of appeal. (*People v. Loughran* (1954), 2 Ill. 2d 258, 263, 118 N.E.2d 310.) Although a written order may not be necessary where the report of proceedings fully and clearly sets forth the facts out of which the contempt citation arose (*People v. Wilson* (1975), 35 Ill. App. 3d 86, 87-88, 341 N.E.2d 34; *People v. Miller* (1970), 130 Ill. App. 2d 637, 645, 265 N.E.2d 175), where a purported adjudication of direct criminal contempt is supported by neither an order of contempt nor an adequate record, the conviction for contempt is void and without force (*People v. Tomashevsky* (1971), 48 Ill. 2d 559, 564-66, 273 N.E.2d 398). We conclude, based on the inadequate record provided to this court, the judgment of contempt cannot stand.

▮ The trial court in this case failed to enter any written order which fully, clearly, and specifically set forth the facts out of which the contempt arose. Likewise, the trial court's oral finding of contempt was insufficient to apprise this court of the facts upon which the contempt was based, as it consisted merely of conclusions and inferences, and does not adequately state the facts out of which the contempt arose. It is unclear what specific conduct resulted in the contempt citation, and no transcript of proceedings illuminates the conduct for which the trial court found this attorney in contempt. Under these circumstances, we must follow the general rule that factual specificity is required in direct criminal contempt proceedings. In so holding, we note that the State offers no authority which would allow this court to uphold an order of direct criminal contempt where the record lacks both a written order and a report of proceedings showing the conduct from which the contempt arose.

Although we cannot sustain the finding of contempt in this case, it is well established that unprofessional, disruptive conduct during trial may result in a proper finding of direct criminal contempt. A trial court need not, and should not, tolerate behavior designed to disrupt, interfere with, or improperly influence the conduct of a trial.

The State's motion for leave to cite additional authority, and the contemnor's response, were ordered taken with the case and the motion is allowed.

Accordingly, the judgment of the circuit court of Lake County is reversed.

Reversed.

LINDBERG, P.J., and UNVERZAGT, J., concur.