THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DIANE POWELL, Defendant-Appellant.

First District (6th Division)   No. 1—92—0855

Opinion filed May 21, 1993.—Rehearing denied July 9, 1993.

Rita A. Fry, Public Defender, of Chicago (Lynn Hubanks Miller, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Christine Cook, and Dori K. Leo, Assistant State's Attorneys, of counsel), for the People.

JUSTICE EGAN delivered the opinion of the court:

Attorney Diane Powell appeals from an order of the circuit court of Cook County finding her in direct criminal contempt of court and fining her $100. The fine was stayed by the trial judge pending appeal.

On January 28, 1992, Ms. Powell, an assistant public defender, appeared before the trial judge on behalf of a criminal defendant and answered ready for trial. Following an off-the-record conference the following occurred:

"THE COURT: On the record. Trial will commence at 11 o'clock.

MS. POWELL: I will be here at 11. I hope the jury will be.

THE COURT: I am not going to have any remarks like that in my courtroom. I will not be spoken to that way. There is no reason for it. I want an apology.

MS. POWELL: I—if I did not believe there was, I would not have spoken that way; and I apologize.

THE COURT: Even if you do have a reason, you will not do that in my courtroom. I want an apology, or I will hold you in contempt. *Take Miss Powell into custody."* (Emphasis added.)

The case was recalled, according to the State, two hours later, during which time Ms. Powell remained in custody. The following occurred:

"MR. CARMODY [Ms. Powell's supervisor]: Could I address the court? Would you allow Ms. Powell to address the court at this time?

THE COURT: For what purpose?

MR. CARMODY: I think she wants to address the court regarding the incident that took place, and also prior to the jury being brought in.

THE COURT: I still would like to know for what purpose. I am not interested in further comments.

MR. CARMODY: I think she would attempt to apologize to the court for what took place this morning.

THE COURT: She wants to address the court in apology?

MR. CARMODY: Yes. I think that—yes. I do not want to do it. I am not the attorney.

THE COURT: *Bring Ms. Powell out.*

MS. POWELL: May I address the bench, Your Honor?

THE COURT: You may.

MS. POWELL: Judge Douglas, I am sorry if my remark, 'I'll be here at 11:00, Judge, I hope the jury is,' was perceived as disrespectful to the office you hold. Often the unavoidable pressures of the advocate system, not to mention the pressures of individual conflicting personalities, create a charged atmosphere resulting in misunderstandings on both sides. I find this to be unfortunate but inevitable. Since my first duty is to my client and since he cannot receive adequate representation from an attorney while in custody, let me again assure you I mean no disrespect to your office.

THE COURT: I asked for that apology at eleven—about ten minutes to eleven. The court has held you in—is holding you in criminal contempt. And I will fine you $100 for your behavior this morning. *I will keep you in custody until your fine is paid.* I will accept your apology, however." (Emphasis added.)

Mr. Carmody then asked the judge to release Ms. Powell from custody on bond and to permit her to represent her client. The following occurred:

"THE COURT: She will be released subject to—she will be able to represent her client in the court trial. *I will release her for that purpose.* She may fully participate in all aspects of the trial.

MR. CARMODY: Is she going to be released from custody now, Judge, prior to the jury being brought out so she can go to the office and prepare her case?

THE COURT: She may bring her files back down, yes, to prepare for trial and be here for trial.

\* \* \*

MR. CARMODY: Thank you. Could we readdress the issue of the fine later on this afternoon?

THE COURT: I have already ruled on that. Nothing else is pending before me right now. How long will you need to get your file and be prepared with your client?

MS. POWELL: About an hour, Judge.

THE COURT: An hour. I will give you one hour to be back."

In her written order, the judge found Ms. Powell in contempt and fined her $100 based on her having

"stated in open court remarks which undermined the integrity and fairness of the court \*\*\* and then having turned her back to the court in silent defiance of the court and the opportunity the court provided her to retract the remarks and the tone of voice [used] to deliver said remarks."

■ Direct criminal contempt requires proof that the acts at issue were calculated to embarrass, hinder or obstruct a court in its administration of justice or to derogate its authority or its dignity or bring the administration of law into disrepute. (*People v. Siegel* (1983), 94 Ill. 2d 167, 445 N.E.2d 762.) The standard of proof for direct criminal contempt is proof beyond a reasonable doubt of contemptuous intent and acts. *Central Production Credit Association v. Kruse* (1987), 156 Ill. App. 3d 526, 509 N.E.2d 136.

■ The worst that may be said of Ms. Powell's remarks is that they were sarcastic (and even that is not clear), and sarcasm alone is not sufficient to sustain a finding of contempt. (*Smith v. Georgia Pacific Corp.* (1979), 76 Ill. App. 3d 667, 395 N.E.2d 214.) Moreover, the remarks could not be construed to be an attempt to embarrass, hinder or obstruct the judge in the administration of justice. If the jurors do not appear for duty on time, that is not the fault of the judge. We make an extreme understatement when we say that the record does not establish direct contempt on the part of Ms. Powell beyond a reasonable doubt.

The judge told Ms. Powell to apologize or she would be held in contempt. She did apologize, but she was still held in contempt and *taken into custody*, where she remained for at least two hours. We express strong disapproval of the contempt finding itself, and we deplore any practice of taking people into custody under circumstances

such as were present here, even if the contempt finding could be upheld.

No purpose would be served by any further discussion of the applicable law and citation of any more cases. Suffice it to say that this is the weakest case involving a finding of contempt on the part of an attorney that we have encountered through research, personal experience or any other source. There are many cases in which reviewing courts have reversed contempt convictions which were based on facts much more egregious than are present here. The power to punish for direct contempt is an extraordinary power and should be exercised with utmost caution. In this unfortunate case, that power was exercised with abandon.

The judgment of the circuit court is reversed.

Judgment reversed.

McNAMARA, P.J., and RAKOWSKI, J., concur.