THE PEOPLE OF THE STATE OF ILLINOIS, Respondent-Appellee, v. JERRY L. BELL, Contemnor-Appellant.

Second District No. 2—94—0517

Opinion filed December 18, 1995.

BOWMAN, J., concurring in part and dissenting in part.

G. Joseph Weller and Kathleen J. Hamill, both of State Appellate Defender's Office, of Elgin, for appellant.

David R. Akemann, State's Attorney, of St. Charles (William L. Browers and Lawrence M. Bauer, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE COLWELL delivered the opinion of the court:

Contemnor, Jerry L. Bell, appeals the order of the circuit court of Kane County finding him in direct criminal contempt of court and sentencing him to six months in jail. The issues on appeal are: (1) whether the contempt order is insufficient when considered in conjunction with the report of proceedings; (2) whether there was sufficient evidence to support a finding of contempt; and (3) whether the sentence in the contempt order is too indefinite and ambiguous. We affirm and remand with directions.

Contemnor was charged with three counts of aggravated battery (720 ILCS 5/12—4(a) (West 1992)) on August 3, 1993. Contemnor filed a *pro se* motion for substitution of judges for cause on August 12, 1993. (725 ILCS 5/114—5(d) (West 1992).) In his motion, contemnor stated that he believed Judges Doyle, Puklin, Petersen, Dunn, and Hogan could not give him a fair trial. Contemnor asked in his motion that his case be removed from Judge Doyle's courtroom and that it be assigned to a judge other than those named in his motion.

Judge Doyle recused himself from contemnor's case on August 19, 1993. Contemnor's case was before Judge Puklin for reassignment on August 27, 1993. On that date, Judge Puklin assigned contemnor's case to Judge Dunn. Contemnor's attorney filed a motion for automatic substitution of judges (725 ILCS 5/114—5(a) (West 1992)) on September 2, 1993, asking that the case be assigned to a judge other than Judge Dunn. Contemnor's motion was allowed, and the case was returned to Judge Puklin (who had been named in the contemnor's August 12, 1993, *pro se* motion for substitution of judges for cause).

On January 5, 1994, the contemnor's attorney told Judge Puklin that he was going to file a motion for substitution of judge for cause. The contemnor's attorney filed a motion for substitution of judge on January 6, 1994, requesting that Judge Puklin be removed for cause. Judge Puklin sent the case to Judge Nottolini for assignment to a judge for a hearing on contemnor's motion for substitution of judge for cause.

Judge Hogan heard contemnor's motion for substitution of judge for cause on January 6, 1994. Judge Hogan denied the motion but granted the contemnor leave to amend the motion in order to specify the allegations regarding prejudice that Judge Puklin exhibited towards the contemnor. During a hearing on January 28, 1994, Judge

Hogan asked contemnor's attorney if he was going to file an amended motion. Contemnor attempted to reply, and Judge Hogan stated, "Mr. Bell, I don't want to listen to you." When contemnor continued to talk, Judge Hogan stated:

"Mr. Bell, you open your mouth again, I'm going to hold you in contempt and you're going to be sentenced to at least three months in the county jail after all of your trials are over."

Contemnor's attorney filed an amended motion for substitution of judge for cause on February 4, 1994. The motion expanded upon contemnor's allegations that Judge Puklin was prejudiced and also alleged that Judge Hogan was prejudiced against contemnor. At a hearing before Judge Hogan on February 4, 1994, contemnor's attorney indicated to Judge Hogan that the amended motion also contained allegations that he (Judge Hogan) was prejudiced and biased against the contemnor and, therefore, requested that Judge Hogan not hear the motion and return the matter to Judge Nottolini for reassignment to a judge not named in the amended motion. Judge Hogan denied that request.

Judge Hogan held a hearing on contemnor's amended motion for substitution of judges for cause on February 24, 1994. The hearing began with the prosecutor stating his belief that, in view of the contemnor's allegation that Judge Hogan was prejudiced, the amended motion should be heard by a different judge. Judge Hogan responded:

"So what? What difference does that make? He can name everybody in the whole circuit. Are we going to transfer it to Du-Page [sic] or Cook or California or Hawaii?"

Judge Hogan stated that the only question before him was whether Judge Puklin was prejudiced and proceeded to conduct the hearing.

Before presenting the merits of the motion, contemnor's attorney informed the court that contemnor had told him that his services were unacceptable. Contemnor's attorney asked for leave to withdraw as counsel. When the court asked contemnor whether he had any objections to his attorney withdrawing, contemnor replied that he believed it was improper for Judge Hogan to conduct the hearing because he was named in the motion for substitution of judges for cause. Judge Hogan stated:

"Okay. It's on the record. Do you want Mr. Parkhurst or not?"

Contemnor replied:

"Your Honor, I am not participating on the question whether or not his motion is proper. I am not expressing any opinion one way or the other with regard to that."

Contemnor's attorney attempted to show the court a letter he

had received from contemnor expressing contemnor's dissatisfaction with counsel's representation. Contemnor objected on the ground that revealing the letter violated the attorney-client privilege. Judge Hogan asked contemnor whether contemnor objected if his attorney's motion to withdraw was granted. Contemnor responded that Judge Hogan should not rule on counsel's motion because the motion for substitution of judges for cause, naming Judge Hogan, was still pending. Judge Hogan responded:

"Would you like me to assign it to Judge Re[h]nquist? He is the Chief Judge of the U.S. Supreme Court. Maybe he could do a better job."

Judge Hogan then asked contemnor if he wanted the public defender. Contemnor stated that Judge Hogan should not be ruling on any aspect of the case under the circumstances. Judge Hogan then said:

"You see, I don't know what you want to do. You don't want any judge so far to hear this case or even this motion. You don't want an attorney to represent you; but at the same time, you don't want to say Mr. Parkhurst is free to withdraw. You are saying you have got a Constitutional right to represent yourself; but at the same time, you are saying you want an attorney to represent you in this hearing. Now, I don't know what you want to do. So either you are going to tell me or I will make my own decision based on what I feel."

Contemnor replied that he wanted Judge Hogan to transfer the case to Judge Nottolini for him to make the decision on his amended motion for substitution of judges for cause. Judge Hogan asked contemnor, if that were denied, what did contemnor want him to do about his attorney. Contemnor told Judge Hogan to do what he wanted to do. Judge Hogan denied contemnor's attorney's motion to withdraw.

Judge Hogan proceeded to hold the hearing on contemnor's amended motion for substitution of judges for cause. The following exchange then occurred:

"MR. BELL: I am going to again object to these proceedings.

THE COURT: I don't care, Mr. Bell. You can either sit here and listen or you can go in the back. I don't care. I warned you once before.

MR. BELL: I am going to reserve my rights. You can warn me all you want to.

THE COURT: You are held in contempt. You are sentenced to three months in the county jail, and that three months will go into effect after—

MR. BELL: Make sure you get copies of the transcript. The next ⋅

thing you can do is file a subpoena to stay these proceedings, and I want him off this case. You should have applied for a different profession.

THE COURT: Make it six months, Mr. Bell. Take him in the back.

MR. BELL: Make it a year.

THE COURT: I can't. Six months.

MR. BELL: Right.

THE COURT: Direct contempt."

The written order holding contemnor in contempt stated:

"Defendant held in direct criminal contempt of court for comments made to Judge Hogan in open court this date. Defendant sentenced to 6 months Kane County Jail to be served consecutive to any sentence on pending cases."

Contemnor filed a timely notice of appeal.

We note that Judge Hogan, on March 3, 1994, granted contemnor's amended motion for substitution of judges for cause and transferred the matter back to Judge Nottolini for reassignment to another judge.

■ Contemnor's first argument on appeal is that the contempt order was invalid because it does not set forth the grounds upon which the contempt is based. We agree with contemnor that the record must demonstrate the grounds upon which the contempt conviction was based. (*People v. Rogers* (1987), 160 Ill. App. 3d 639, 641-42.) We also agree that the written order in this case standing alone would not support a conviction of contempt. However, where a complete report of the proceedings giving rise to a contempt order is available, it is to be considered in determining the propriety of the order of contempt. (*People v. Miller* (1972), 51 Ill. 2d 76, 78.) We conclude that, when the report of proceedings in the present case is considered with the contempt order, the facts supporting the finding of contempt are fully set forth in the record. *Miller*, 51 Ill. 2d at 78.

■ Contemnor's second argument on appeal is that the evidence was insufficient to support a finding of contempt. Acts which constitute direct criminal contempt of court are those which are calculated to embarrass, hinder, or obstruct a court in its administration of justice or to derogate from its authority or dignity, or bring the administration of law into disrepute. (*Miller*, 51 Ill. 2d at 78.) With direct criminal contempt, the contempt is committed in the physical presence of the judge or within an integral part of the court while the court is performing its judicial functions. *People v. Sheahan* (1986), 150 Ill. App. 3d 572, 574.

In determining whether direct criminal contempt has occurred,

the reviewing court may consider provocation by the trial court and erroneous trial court rulings which may have triggered the contemnor's comments. (*People v. Bertelle* (1987), 164 Ill. App. 3d 831, 834.) Provocation is not a defense to contempt, but the circumstances of the underlying proceedings may be weighed in determining whether the offense has been proved beyond a reasonable doubt. (*People v. Coulter* (1992), 228 Ill. App. 3d 1014, 1021.) On appeal, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Simac* (1992), 236 Ill. App. 3d 1096, 1101, *aff'd on other grounds* (1994), 161 Ill. 2d 297.

The record in the present case indicates that contemnor: (1) repeatedly objected to Judge Hogan holding the hearing, often interrupting the court or contemnor's own attorney; (2) refused to answer questions regarding whether he wished his attorney to be allowed leave to withdraw; (3) objected again to the proceedings after he had been told his objection was on the record; and (4) stated, after Judge Hogan told him to sit and listen or go in the back and that he had already warned contemnor once, "I am going to reserve my rights. You can warn me all you want to." This remark was clearly improper. The trial judge personally observed contemnor's mannerisms and heard the tone of his voice. We conclude that the evidence was sufficient to support a finding of contempt. *Simac*, 236 Ill. App. 3d at 1101.

We also consider whether the trial court's conduct could have provoked contemnor's behavior. Although we agree that Judge Hogan's comments to contemnor became somewhat sarcastic and inappropriate at times, we cannot conclude that these circumstances mitigated contemnor's conduct.

Contemnor was warned that his objection was on the record and was instructed not to speak. Moreover, contemnor was warned at a previous hearing while making similar objections that if he said one more word he would be held in contempt. Therefore, we conclude that contemnor knew that the type of comment he made was unacceptable and that it could result in a contempt finding.

We believe the dissent misstates the facts in this case. The dissent contends that the contemnor was acting *pro se* at the time he was held in contempt. The record in the present case, however, shows that the contemnor was represented by counsel at the time of Judge Hogan's contempt order. As previously noted, just prior to the contemnor's behavior upon which the contempt order was predicated, Judge Hogan denied contemnor's attorney's motion to withdraw.

■ We note that the contemnor is correct that Judge Hogan should not have heard contemnor's motion for substitution of judges for cause. (*People v. Brim* (1993), 241 Ill. App. 3d 245, 249.) Motions for substitution of judges for cause are governed by section 114—5(d) of the Code of Criminal Procedure of 1963 (725 ILCS 5/114—5(d) (West 1992)) (section 114—5(d) herein). Section 114—5(d) provides:

> "(d) *** [A]ny defendant may move at any time for substitution of judge for cause, supported by affidavit. Upon the filing of such motion a hearing shall be conducted as soon as possible after its filing by a judge *not named in the motion*; provided, however, that the judge named in the motion need not testify, but may submit an affidavit if the judge wishes. If the motion is allowed, the case shall be assigned to a judge not named in the motion. If the motion is denied the case shall be assigned back to the judge named in the motion." (Emphasis added.) 725 ILCS 5/114—5(d) (West 1992).

■ We must determine whether Judge Hogan lost his power and authority to hold the contemnor in direct criminal contempt because he improperly heard contemnor's motion for substitution of judges for cause. There are numerous cases which hold that once a motion for an *automatic* substitution of judge (725 ILCS 5/114—5(a) (West 1992)) is properly brought, the trial judge loses all power and authority over the cause except to make the necessary orders to effectuate the change, and if the movant's motion is improperly denied, all subsequent action of the trial court is void. (*E.g., People v. Redisi* (1989), 188 Ill. App. 3d 797, 801.) The statute that addresses automatic substitution of judge states:

> "(a) Within 10 days after a cause involving only one defendant has been placed on the trial call of a judge the defendant may move the court in writing for substitution of that judge on the ground that such judge is so prejudiced against him that he cannot receive a fair trial. Upon the filing of such a motion the court shall proceed no further in the cause but shall transfer it to another judge not named in the motion. The defendant may name only one judge as prejudiced, pursuant to this subsection; provided, however, that in a case in which the offense charged is a Class X felony or may be punished by death or life imprisonment, the defendant may name two judges as prejudiced." 725 ILCS 5/114—5(a) (West 1992).

■ Our research has not found a case which explicitly states that once a motion for substitution of judges for cause is properly brought, the trial judge loses all power and authority over the cause except to make the necessary orders to transfer the cause to another judge not named in the motion for a hearing on the motion. *Brim* is the only

case we find that comes close to holding that once a motion for substitution of judges for cause is properly brought, the trial judge loses all power and authority over the cause except to make the necessary orders to transfer the cause to another judge not named in the motion for a hearing on the motion. (*Brim*, 241 Ill. App. 3d at 249.) The court in *Brim* held:

> "[T]he trial judge against whom the motion [for substitution of judge for cause] is filed should not assess the truthfulness of the allegations. [Citation.] Section 114—5(d) of the Code expressly provides a judge other than the one àgainst whom the allegation is made should rule on the motion. [Citations.] If a motion for substitution of judge is improperly denied, all subsequent action by the trial judge is void. [Citation.]" (*Brim*, 241 Ill. App. 3d at 249.)

We now hold that the rationale heretofore applied only to motions for automatic substitution of judge (725 ILCS 5/114—5(a) (West 1992)), that once a motion for substitution of judge is properly brought a judge loses all power and authority over the cause, applies to motions for substitution of judge for cause (725 ILCS 5/114—5(d) (West 1992)). (See *Brim*, 241 Ill. App. 3d at 249.) We note, however, that there are instances, which are not applicable to the present case, where a trial court need not transfer a motion for substitution of judges for cause to another judge. *E.g.*, *People v. Damnitz* (1994), 269 Ill. App. 3d 51, 55 (holding that trial judge did not err in refusing to transfer to another judge defendant's motion for substitution of judge for cause where defendant failed to establish even a threshold basis for his substitution motion); *People v. Marshall* (1988), 165 Ill. App. 3d 968, 975 (holding that trial judge did not err in refusing to transfer to another judge defendant's motion for substitution of judge for cause where defendant's motion lacked specificity); *People v. Crete* (1985), 133 Ill. App. 3d 24, 29 (holding that trial judge did not err in refusing to transfer to another judge defendant's motion for substitution of judge for cause where defendant's motion was not made in good faith).

■ Even though Judge Hogan did not have the power to hear the motion for substitution, he did have the power to hold the contemnor in direct criminal contempt for his disrespectful behavior towards the court, which was calculated to undermine the court's dignity and bring the court into disrepute. (See *People v. Wilson* (1975), 35 Ill. App. 3d 86, 88.) A trial judge has the power and authority to find an individual in criminal contempt for conduct committed in the presence of the court. (See *In re Terry* (1888), 128 U.S. 289, 310, 32 L. Ed. 405, 410, 9 S. Ct. 77, 81; *Wilson*, 35 Ill. App. 3d at 88.) In fact, a trial

judge has a duty to maintain order and decorum in the courtroom. (*People v. Dixon* (1976), 36 Ill. App. 3d 247, 253.) Flagrant disregard in the courtroom of elementary standards of proper conduct cannot be tolerated. (*People v. Heidelberg* (1975), 33 Ill. App. 3d 574, 594.) It is well recognized that a court is vested with the inherent power to preserve its dignity by the use of contempt proceedings. (*E.g.*, *In re Baker* (1978), 71 Ill. 2d 480, 484.) Such a power inheres in the judicial branch of government, and the legislature may not restrict its use. (*Baker*, 71 Ill. 2d at 484.) Further, such power is essential to the proper and effective functioning of the courts and to the administration of justice. (*47th & State Currency Exchange, Inc. v. B. Coleman Corp.* (1977), 56 Ill. App. 3d 229; *People v. Bloom* (1966), 35 Ill. 2d 255.) The United States Supreme Court noted in *In re Terry* that " '[c]ourts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum in their presence.' " (*In re Terry*, 128 U.S. at 303, 32 L. Ed. at 408, 9 S. Ct. at 79, quoting *Anderson v. Dunn* (1821), 19 U.S. (6 Wheat) 204, 227, 5 L. Ed. 242, 248.) It would be utterly impossible for the law of the land to be properly administered if judges do not have the power to prevent instances of indecorum from occurring in their own presence. (*In re Terry*, 128 U.S. at 308, 32 L. Ed. at 410, 9 S. Ct. at 81.) Were we to hold that a judge, who improperly hears a motion for substitution of judge for cause, does not have the power to hold in direct criminal contempt individuals who exhibit disrespectful behavior towards the court, which is calculated to undermine the court's dignity and bring the court into disrepute, "judicial tribunals would be at the mercy of the disorderly and violent, who respect neither the laws enacted for the vindication of public and private rights, nor the officers charged with the duty of administering them." (*In re Terry*, 128 U.S. at 313, 32 L. Ed. at 412, 9 S. Ct. at 83.) As such, Judge Hogan had the inherent power to hold contemnor in direct criminal contempt for his behavior before the court irrespective of the fact that under section 114—5(d) he should not have heard contemnor's motion for substitution of judges for cause. See *Wilson*, 35 Ill. App. 3d at 88.

■ Contemnor's final argument on appeal is that the cause must be remanded because the sentence is too indefinite and ambiguous. A sentence which is to run consecutively must clearly define when it is to begin. (*People v. Toomer* (1958), 14 Ill. 2d 385, 387.) The State concedes that the cause must be remanded for the trial court to give a description by case number, date, names of the parties, and nature of the offenses to which the six-month sentence is to be appended. We agree that we must remand this cause for the imposition of a proper

sentencing order specifying the case number, date, names of the parties and sentences to which contemnor's sentence is to follow.

For the foregoing reasons, we affirm contemnor's conviction and remand the cause to the trial court for the entry of a proper sentencing order.

Affirmed and remanded with directions.

Affirmed.

HUTCHINSON, J., concurs.

JUSTICE BOWMAN, concurring in part and dissenting in part:

Although I agree with the majority's conclusion that the written order in the present case is insufficient to support a finding of contempt, I disagree with its conclusion that the report of proceedings shows contempt beyond a reasonable doubt. Direct criminal contempt of court is " ' "conduct which is calculated to embarrass, hinder or obstruct a court in its administration of justice or derogate from its authority or dignity, thereby bringing the administration of law into disrepute." ' " (*People v. Simac* (1994), 161 Ill. 2d 297, 305, quoting *People v. L.A.S.* (1986), 111 Ill. 2d 539, 543, quoting *People v. Javaras* (1972), 51 Ill. 2d 296, 299; see also R. Johnston & K. Bry, *An Overview of Illinois Contempt Law: A Court's Inherent Power and the Appropriate Procedures and Sanctions,* 26 J. Marshall L. Rev. 223, 224 (1993).) A finding of direct criminal contempt requires proof beyond a reasonable doubt of an act and an intent. (*People v. Griffith* (1993), 247 Ill. App. 3d 21, 23.) Both of these elements are satisfied where the record shows beyond a reasonable doubt a voluntary act by one who knows or reasonably should know that the act is wrongful. (*Griffith*, 247 Ill. App. 3d at 23.) In determining whether an individual is guilty of criminal contempt, a reviewing court may consider provocation or legal error by the trial court. *People v. Coulter* (1992), 228 Ill. App. 3d 1014, 1021.

Although essential to the orderly administration of justice (*Simac*, 161 Ill. 2d at 305), the contempt power is " 'a delicate one, and care is needed to avoid arbitrary or oppressive conclusions.' " (*Simac*, 161 Ill. 2d at 306, quoting *Cooke v. United States* (1925), 267 U.S. 517, 539, 69 L. Ed. 767, 775, 45 S. Ct. 390, 396.) As our supreme court has stated:

> "The power to adjudge guilt and impose punishment without proof or examination, and without plea, trial or issue exists in no other situation or proceeding. It is an exception to our constitutional guarantees which we would regard as intolerable in any

other proceeding or for any other purpose. It is readily susceptible of abuse and fraught with danger not only to personal liberties but to the respect and confidence which our courts must maintain. Although such a power is universally recognized as essential to an orderly and effective administration and execution of justice, it should be exercised with utmost caution ***." *People v. Loughran* (1954), 2 Ill. 2d 258, 263.

Viewed in the light of these principles, the report of proceedings in the present case does not support the trial court's finding of contempt. The only remark by contemnor that is even arguably contumacious is his statement "I am going to reserve my rights. You can warn me all you want to." This statement, however, must be considered in context: it followed three unprovoked outbursts of anger by the trial court which even the majority candidly characterizes as "sarcastic and inappropriate." Additionally, as the majority acknowledges, contemnor's legal position—that it was improper for Judge Hogan to hear the motion for substitution of judges for cause—was absolutely correct. See *People v. Brim* (1993), 241 Ill. App. 3d 245, 249.

Thus, the record shows that when contemnor (acting as his own attorney) was held in contempt, he was attempting to defend a correct legal position. Instead of according contemnor's legal argument the serious consideration it merited, Judge Hogan responded with gratuitous, unwarranted outbursts of rancor. Contemnor's response, "I am going to reserve my rights. You can warn me all you want to," was neither an affront to the court's dignity nor a hinderance to the court's function, given the circumstances. (See *People v. Bertelle* (1987), 164 Ill. App. 3d 831, 834 ("[i]f it can be shown that the underlying conduct constituted a good-faith attempt by the attorney to represent his client without hindering the court's functions or dignity, a finding of direct contempt will be reversed upon review").) Moreover, the record demonstrates that the remarks contemnor made after he was found in contempt ("[m]ake sure you get copies of the transcript" and "[y]ou should have applied for a different profession") were directed toward contemnor's counsel, not the court. Thus, these remarks cannot be the basis of the contempt order.

Relevant case law also mandates reversal of the trial court's contempt finding. *People v. Hanna* (1976), 37 Ill. App. 3d 98, ignored by the majority, is particularly instructive. There, the contemnor was a *pro se* defendant in a robbery case. During argument on a motion, the trial court found the contemnor to be in direct contempt of court on the basis of the following statement:

" 'The way things are going now my side ain't ever going to be

heard—uh—but I'm going to get it—I'm going to get it on the record. I'm going to make a record, because I know what happened. *This Court has messed up so much already it's pathetic.'* " (Emphasis in original.) *Hanna*, 37 Ill. App. 3d at 99.

The appellate court in *Hanna* held the above statement to be insufficient to support a finding of contempt. The court stated: "an isolated, disparaging statement not made in loud voice or boisterous manner but offensive to the sensibilities of the judge, although embarrassing to the court and derogating from its dignity, is not contempt." *Hanna*, 37 Ill. App. 3d at 99, citing *In re Little* (1972), 404 U.S. 553, 30 L. Ed. 2d 708, 92 S. Ct. 659; see also *People v. Ziporyn* (1984), 121 Ill. App. 3d 1051, 1059 (reversing trial court's finding of contempt; citing *Little* and *Hanna* with approval).

*Hanna* is analogous to the present case. Here, as in *Hanna*, we are faced with a contempt finding against a *pro se* defendant in a criminal case who aggressively insisted upon making a complete record and preserving his rights. Likewise, as in *Hanna*, the record before us does not indicate that contemnor's comments were made in a loud or boisterous manner. The majority's statement that "[t]he trial judge personally observed contemnor's mannerisms and heard the tone of his voice" is misleading. (276 Ill. App. 3d at 945.) While it is true that Judge Hogan observed contemnor and heard his voice, nothing in the record indicates contemnor's mannerisms or tone of voice was disrespectful. Thus, the majority's suggestion that these factors support the finding of contempt is improper. Additionally, while the majority believes contemnor's statement seriously derogated from the court's authority, the record reveals that it was an isolated remark whose chief effect was to offend Judge Hogan's sensibilities. This is not a sufficient basis for a finding of contempt. See *Brown v. United States* (1958), 356 U.S. 148, 153, 2 L. Ed. 2d 589, 596, 78 S. Ct. 622, 626 (trial courts "must be on guard against confusing offenses to their sensibilities with obstruction to the administration of justice"); *Craig v. Harney* (1947), 331 U.S. 367, 376, 91 L. Ed. 1546, 1552, 67 S. Ct. 1249, 1255 ("[j]udges are supposed to be men [and women] of fortitude, able to thrive in a hardy climate").

In sum, I cannot agree that contemnor's actions amounted to conduct which was intended to hinder the court's administration of justice or to derogate from its authority. On the contrary, the record shows only that defendant, acting as his own attorney, vigorously argued a correct legal position and responded in an understandable manner to injudicious comments by the trial court. As one panel of the appellate court has aptly stated: "The power to punish for direct contempt is an extraordinary power and should be exercised with

utmost caution. In this unfortunate case, that power was exercised with abandon." *People v. Powell* (1993), 248 Ill. App. 3d 164, 168.

Thus, I dissent from the majority's affirmance of the trial court's ruling finding defendant in contempt. I concur with the majority's holding that the case must be remanded for the entry of a proper written order.

I respectfully concur in part and dissent in part.